ANDREW ERWIN *v.* JOHN GREENE and others.

Solidarity must be stipulated expressly. It cannot be presumed. C. C. 2088. So of surety-ship. Ib. 3008.

Defendants purchased jointly certain lots of ground, giving their separate notes, payable at different periods, each for one-third of the price. The act of sale declared, that they were interested in the purchase in the same proportion; and provided "that to secure the payment of the aforesaid notes, the purchasers hereby mortgage the herein described property." Two of the purchasers having paid their notes, plaintiff obtained an order of seizure and sale, against the whole property, for the amount of the remaining note. *Held*, that the obligations of the purchasers, though in the same act, are as separate and distinct as if made by different contracts at different times, each purchaser being only bound for his third of the price; and that the notes of each were intended to be secured by a mortgage on his portion only of the property.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

SIMON, J. This is an appeal from an order of seizure and sale, granted on the petition of the plaintiff, as transferee of James Erwin, who sold the property to the defendants. The act of sale shows, that four lots of ground, therein described, were offered for sale at public auction, and adjudicated to the defendants; to wit, Peters & Millard, Henry Lockett, and John Greene, for the sum of $37,800, at a credit of six months without interest, and one, two, three, four, and five years, with six per cent interest per annum, for approved endorsed notes, secured by special mortgage, until final payment. The act of sale was passed accordingly, to the three purchasers, *all present and accepting*, according to a plan deposited in the office of the notary, for and in consideration of the said sum of $37,800, for which, *three sets of notes*, endorsed by different persons, corresponding with the terms of the adjudication, were given to the vendor; to wit, the notes of Peters & Millard, endorsed by Henry Lockett, those of Henry Lockett, endorsed by Peters & Millard, and those of John Greene, endorsed by James Ogilvie, all paraphed, "*ne varietur*," by the notary. The act of sale further stipulates, that *to secure the payment of the aforesaid notes, the purchasers hereby mortgage and specially hypothecate* the herein described property; and at the

close of the act, it is stated, that " the said purchasers hereby declare, *that they are interested in the herein described property*, as follows, viz : Peters & Millard *for the one-third interest*, and Henry Lockett, and John Greene, *each, for one-third interest*." The price had been divided accordingly ; and the vendor took the three distinct sets of notes from each of the vendees respectively, in accordance with their respective proportions of interest, and a list of the said notes is contained in the act of sale, forming the gross amount of the purchase.*

The petition represents, that all the notes described in the act as being drawn by Henry Lockett and Peters & Millard, *have been paid ;* but that the following described notes, drawn by John Greene, are still due and unpaid, to wit : six several promissory

---

* The clauses of the act of sale material to the question, are as follows :

" Before me William Young Lewis, notary &c., personally appeared James Erwin who declared, that in pursuance of a public sale, the property hereinafter described and owned by the said appearer, was adjudicated to Peters & Millard, Henry Lockett, and John Greene, for the sum of $37,800, at a credit of six months without interest, and one, two, three, four, and five years, with six per cent interest per annum, for approved endorsed notes, secured by special mortgage, until final payment," &c. " Now, therefore, in consideration of the premises, the said James Erwin does, by these presents, grant, bargain, transfer, sell, convey and deliver unto Samuel Jarvis Peters and Charles Millard, trading under the firm of Peters & Millard, Henry Lockett, and John Green, all present and accepting, the following described property." &c. " This sale is made agreeably to the aforesaid adjudication, for, and in consideration of the sum of $37,800, payable as follows :" [Here follows a list of the notes ; those of Peters & Millard endorsed by Lockett, those of Lockett by Peters & Millard, and those of Greene by one Ogilvie.] " To secure the payment of the aforesaid notes, with all interest and costs thereon, the said purchasers hereby mortgage and specially hypothecate the herein described property, promising and binding themselves not to alienate or encumber the same to the prejudice of the said act. To have, and to hold, the aforesaid property unto the said purchasers, to their proper use and behoof, forever ; and the said vendor, for himself, his heirs, and assigns, unto the said purchasers, their heirs and assigns, the herein described property, against the legal claims of all and every person and persons whomsoever, shall and will forever warrant and defend by these presents, hereby subrogating and transferring to said purchasers, all his rights of warranty and action against his vendor and all preceding vendors, with full power to exercise the same according to law. The said purchasers hereby declare that they are interested in the herein described property, as follows, viz : Peters & Millard for the one-third interest, and Henry Lockett, and John Greene, each, for one-third interest."

notes drawn by Greene to the order of, and endorsed by, James Ogilvie for the sums·therein stated, being part of the price of the property sold. The judgment, or order appealed from, orders, that the mortgaged premises described in the petition (the four lots of ground) be seized and sold as prayed for, and according to law.

The question presented in this case, is one of considerable difficulty, and we must confess, that the conclusion which we have adopted is not free, even in our own minds, from objections which may be urged with a certain degree of plausibility ; but they have appeared to us mcre specious than solid, and we feel convinced, that our judgment is based upon a correct application of the true principles of law which should govern this case, and is in accordance with the real intention of the parties at the time of the contract.

On the one hand, it is contended, that the plaintiff's mortgage reserved in the act, and therein declared and stipulated to secure the payment of the notes, extends over all and every part of the property sold, to be exercised on the four lots until the complete payment and satisfaction of the whole price, principal and interest ; that the vendor never meant to divide his security ; and that the purchasers, although they fixed their respective proportion of interest in the property purchased, as between themselves, by the last clause contained in the act, fully understood, that the *entirety* of the property purchased was to be the security for the purchase money.

On the other hand, it is insisted, that the division of the property, or of the purchasers' interest therein, was provided for in the act of sale ; that the vendor consented to such division ; that he took the separate notes of the purchasers accordingly ; and that it was distinctly and perfectly understood, that the payment of the notes by one of the vendees, would extinguish his obligation, and give him a title free from the vendor's mortgage upon his portion.

It will be conceded, that the obligation contracted by the purchasers of the property ordered to be seized and sold, was a joint one ; and that, had they given no notes for their respective portions of the price, they would have been bound jointly for the payment of the purchase money. 13 La. 448. Civil Code, art. 2075.

If so, after being all sued upon their joint contract as required by art. 2080, it is clear, that the two obligors who had paid their proportions, would be discharged from their obligation, and judgment would be rendered in their favor. Civil Code, art. 2082. Here, the contract is not only a joint one by the effect of the law, but each of the obligors has promised respectively and separately for himself, to pay his portion of the price, and has given his own notes accordingly, which have been accepted and received by the vendor. Thus, they contracted several and distinct obligations, which, although contained in the same contract, are by law considered as much individual and distinct, as if they had been contained in different contracts and made at different times, and as such, although created by one act, have no other effect than the same obligations would have had, if resulting from separate contracts. Civil Code, arts. 2073, and 2079. Now, it is a well known rule, that solidarity is not presumed, and that it must be expressly stipulated, Civil Code, art. 2088 ; and that suretyship cannot be presumed ; that it ought to be expressed, and is to be restrained within the limits intended by the contract. Civil Code, art. 3008. The contract, in this case, does not contain any clause which would give rise even to any presumption of solidarity or suretyship. Each of the obligors promised to pay his portion of the price for which he gave his separate notes ; and they took care to distinguish, and designate the proportion of their respective interests in the property, in the same act which constitutes and establishes their liability as purchasers. We cannot doubt, that the vendor understood it so, and that he signed the act of sale with the idea, that each of the purchasers was only bound for his third of the price, and that the said third formed the whole extent of his obligation under the contract.

In the case of *Walton & Kemp* v. *DeLizardi*, 15 La. 593, in which, we confess, the clauses and stipulations of the act of mortgage, were much stronger than those under consideration, and put the question out of the reach of any doubt, we recognized certain legal principles, which, in our opinion, are applicable to the case at issue. We said, that "the mortgage is in its nature indivisable, and is a legal right on the property bound for the discharge of the obligation." Civil Code, art. 3249. This general rule,

which is a very safe one in itself, cannot, it seems to us, apply to the case where two or more persons contract distinct obligations, and promise to pay separately their proportion of the price of property, which, though sold in a lump, is shown by the contract itself, to have been purchased by each for a distinct and separate portion. There are cases to which the rule would very properly apply: for instance, if a man was to buy a piece of property for which he was to give his notes payable in two or more instalments, it is clear, that the payment of one note would not discharge the mortgage *pro tanto*, and that the property would remain wholly mortgaged for the balance of the price. After the death of a mortgagor, although his heirs would only be bound personally, each for his virile portion, the mortgage would continue to exist upon the integral property, until the perfect payment of the debt. But to say, that my property, my portion of interest in it, should be, and remain mortgaged to secure the obligation of my co-purchaser, that in buying it, my right to keep it would depend upon my co-vendees' complying with their separate contracts, would be giving to my obligation the effect of solidarity or of suretyship, which cannot be presumed. Again, as we said in the case of DeLizardi above quoted, an express stipulation is necessary. Here, the contract in its origin was, perhaps, such as to come under the application of the legal rule of the indivisibility of the mortgage ; and we are free to admit, that had the sale been passed to the three purchasers, without any division of the price, and without any distinction of interest, the mortgage might perhaps have remained entire and unaffected, until the payment of the whole price ; but the parties thought proper to establish in the act the distinct amount to be paid by each, and to specify and designate their respective portions of interest in the property ; this was accepted by the vendor ; the debt was divided, and the respective notes of the purchasers were taken by him accordingly. Each third became the object of a separate obligation, secured by a mortgage upon the property bought ; and such mortgage being only an accessary to the principal obligation, it is obvious, that the extinguishment of the principal obligation, must necessarily operate the release of the mortgage. Civil Code, arts. 3251, 3252.

It has been urged, that the act contains the stipulation, that

Erwin v. Greene and others.

" *to secure the payment of the aforesaid notes, the purchasers hereby mortgage and specially hypothecate the herein described property.*" This clause would equally apply to each of the obligations resulting from the entire purchase, in cases in which the obligors stipulate respectively, for themselves, and must be understood in reference to the previous and subsequent stipulations ; and thus, it would undoubtedly result, that it means nothing more than that the notes given by each purchaser, are to be secured by a special mortgage on his share, or portion, of the therein described property. At any rate, this might perhaps create a doubt, which cannot benefit the vendor. *In dubiis, quod minimum est sequimur.*

Upon the whole, we conclude from the context of the act, that the intention of the parties was not to become bound for each other, nor as the security of each other, and that the plaintiff has not shown himself entitled to the seizure and sale of the whole property, to satisfy the one-third of the price, due by John Greene. It was the duty of the vendor to have required stipulations to that effect ; and having not done so, when it was in his power, we cannot relieve him. *Actore non probante, absolvitur reus.* Another maxim, *in cujus erat potestate legem apertius dicere,* is peculiarly applicable to his case.

It is, therefore, ordered, that the judgment or order appealed from, be so modified as to extend only to the seizure and sale of John Greene's undivided third of the property, described in the plaintiff's petition. The costs of this appeal to be borne by the plaintiff and appellee.